J-A28023-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: ADOPTION OF: K.M.S., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.E., MOTHER | : : : : : : : | |
| | : | No. 630 MDA 2021 |

Appeal from the Decree Entered April 21, 2021
In the Court of Common Pleas of York County Orphans' Court at No(s):
2021-0011

| | | |
|---|---|---|
| IN THE INTEREST OF: K.S., A MINOR | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.E., MOTHER | : : : : : : : | |
| | : | No. 656 MDA 2021 |

Appeal from the Order Entered April 21, 2021
In the Court of Common Pleas of York County Juvenile Division at No(s):
2021-0011,
CP-67-DP-0000245-2019

BEFORE:   LAZARUS, J., NICHOLS, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY NICHOLS, J.:                    **FILED JANUARY 06, 2022**

Appellant A.E. (Mother) files these consolidated appeals from the decree granting the petition to involuntarily terminate her parental rights to her minor, dependent daughter, K.M.S. a/k/a K.S. (Child), born in March of 2019, pursuant to the Adoption Act, 23 Pa.C.S. § 2511(a)(1), (2), (5), (8), and (b),

_____

[*] Former Justice specially assigned to the Superior Court.

and from the order changing Child's placement goal to adoption under the Juvenile Act, 42 Pa.C.S. § 6351.[1]  The petition to involuntarily terminate Mother's parental rights and the motion for goal change were filed by Appellee, York County Office of Children, Youth, and Families (the Agency). Additionally, Mother's counsel, Lori A. Yost, Esq. (Counsel),[2] filed a petition to withdraw, as well as an **Anders**[3] brief asserting that Mother's appeals are frivolous.  After review, we affirm the trial court's decree terminating Mother's parental rights, dismiss Mother's appeal from the order changing Child's placement goal as moot, and grant Counsel's petition to withdraw.

The trial court summarized on the record the relevant facts and procedural history of these matters as follows:

> This is the date and time scheduled for a hearing in the interest of [Child] docket 2021-0011 in the orphans' court and docket CP-67-DP-245-2019 in the dependency court.  The court has before it petitions filed by the [Agency].  The first petition is a petition to

---

[1] On June 11, 2021, we consolidated the appeals at 630 MDA 2021 and 656 MDA 2021 *sua sponte*.  **See** Pa.R.A.P. 513; **see also** Pa.R.A.P. 2138.

[2] The record further reveals that Martin Miller, Esq., is counsel on behalf of the Agency, David Worley, Esq., is Child's guardian *ad litem* (GAL), and Kara Kucherich, Esq., is Child's legal counsel.  N.T., Hr'g, 4/20/21, at 2.  **See In re L.B.M.**, 161 A.3d 172, 174-75, 180 (Pa. 2017) (plurality) (courts must appoint counsel to represent the legal interests of a child involved in a contested involuntary termination of parental rights proceeding; a child's legal interests are separate from a child's best interest as a child's legal interests are synonymous with the child's preferred outcome, and a child's best interest must be determined by the court).

[3] **Anders v. California**, 386 U.S. 738 (1967); **see also Commonwealth v. Santiago**, 978 A.2d 349 (Pa. 2009).

involuntarily terminate the parental rights of [Mother and Father.[4]] The second petition is to change the court-ordered goal from reunification to that of placement for adoption . . . .

The [c]ourt has made part of today's record, without objection, the entire dependency file regarding [Child,] again filed at docket CP-67-DP-245-2019. The [c]ourt has also taken judicial [notice] of all applications, motions, and orders filed in the dependency action as part of today's orphans' court proceeding without objection. Also, without objection, the [c]ourt made part of today's record the [Agency's] Exhibits 1 through 5.

The [c]ourt did note for the record that Attorney Miller, on behalf of the [A]gency; Attorney Worley, as guardian *ad litem*; and Attorney Kucherich, as legal counsel for [Child], had signed a stipulation of counsel, which was filed with the [c]ourt on April 15th of 2021. The petition for involuntary termination of parental rights and change of goal were filed on January 21st of 2021. [Child] was first adjudicated dependent on October 10th of 2019, approximately 18 months ago. [The Agency] filed for involuntary termination under 23 Pa.C.S. § 2511 (a) (1), (2), (4), (5) and (8).

Based on the testimony the [c]ourt has heard, and the exhibits and documents that have been made part of and are incorporated into today's proceeding, the [c]ourt finds that the [A]gency has met its burden to have the parental rights of both Mother and Father to [Child] involuntarily terminated. The [A]gency met its burden by clear and convincing evidence. The [A]gency has also met its burden as it relates to its petition to change the court-ordered goal [from] reunification [to] adoption.

In determining that the [A]gency has met its burden regarding both petitions, the [c]ourt makes the following findings. Since [Child] was adjudicated dependent, there have been three Permanency Review Hearings and three Permanency Review orders issued by the [c]ourt. In its March 3rd of 2020 Permanency Review order, the [c]ourt found that Mother had made minimal compliance with the permanency plan for her and that Father had made no compliance with the permanency plan. The [c]ourt further found that Mother had made minimal progress and Father had made no progress towards alleviating the circumstances which necessitated [C]hild's original placement and the

---

[4] The trial court also involuntarily terminated Father's parental rights to Child. N.T., Op., 4/20/21, at 3. However, Father did not file an appeal.

- 3 -

adjudication of [Child as dependent]. In its August 11th of 2020 Permanency Review order, the [c]ourt found that there had been no compliance with the permanency plan by Mother or Father and there had been no progress by Mother or Father towards alleviating the circumstances which necessitated the original placement of [C]hild in foster care. Finally, in its Permanency Review order dated January 7th of 2021, the [c]ourt again found no compliance with the permanency plan by Mother and Father and no progress by Mother or Father towards alleviating the circumstances which necessitated the original placement of [C]hild.

The [c]ourt finds that as of today's date neither Mother nor Father have documented that they have been able to acquire safe, stable, and appropriate housing for reunification with [Child]. Neither Mother nor Father have documented lawful income to the [A]gency, other than Mother providing one pay stub to the [A]gency in September of 2020. The record reflects that Mother was incarcerated from late 2020 through early 2021 and Mother has not provided any documentation of any lawful income since her release from incarceration. Since the adjudication of [Child] on October 10th of 2019, neither Mother nor Father have performed any parental duties on behalf of [Child]. Neither Mother nor Father have attended any doctor or other appointments on behalf of [Child], and neither parent has provided any gifts or cards to [Child].

Since the adjudication of dependency, Father has had no visits with [Child]. Furthermore, Mother has had no visits with [Child] in at least approximately 16 months. The [c]ourt notes that [it] did not suspend Mother or Father's rights to visit with [Child] in an appropriate manner. The [c]ourt finds here today that neither parent is ready to assume custody of [Child].

The [c]ourt heard testimony here today as it relates to Mother that [she was referred to] Catholic Charities [for drug testing, rehabilitation services, and assistance in accessing parenting resources and supervision of visits with Child[5]] . . . the most recent time on February 8th of 2021[,] and [that ended] unsuccessfully due to noncompliance by Mother and lack of communication by Mother with the Catholic charities in-home team. The [c]ourt heard further testimony that Mother is currently on supervised bail

---

[5] *See* N.T., Hr'g, 4/20/21, at 22-26.

regarding pending charges of prostitution and possession of drug paraphernalia. Her probation officer testified that Mother is currently not compliant with her supervised bail. Mother tested positive for marijuana in February, and her current whereabouts are unknown to her probation officer. Testimony further established that Father has had no contact with the agency since approximately February of 2021.

The [c]ourt finds that there is no parental bond between [Child] and Mother or Father. The [c]ourt further finds that [Child] would suffer no long-term negative impact from Mother and Father's parental rights being terminated. The [c]ourt finds that neither Mother nor Father have made any progress to alleviate the circumstances which necessitated the adjudication of [Child] as . . . dependent . . . and the placement of [Child] in foster care. Neither Mother nor Father have completed any of the goals which were set forth for them in the family service plans, which were provided to Mother and Father throughout the period of adjudication of dependency. A pre-adoptive resource has been identified for [Child].

The [c]ourt notes that for today's hearing neither Mother [nor Father] have appeared and participated in today's proceeding. The [c]ourt finds that both Mother and Father were provided appropriate notice of today's proceeding. The [c]ourt finds that termination of both Mother and Father's parental rights best serves the needs and welfare of [Child]. Said termination of Mother and Father's . . . parental rights will allow [Child] to move forward and achieve permanency.

The [c]ourt will be filing a final decree for involuntary termination of parental rights on this day, and in doing so the [c]ourt is satisfied as to the truth of the facts set forth in the [A]gency's petition and finds [Mother] and [Father] have forfeited their parental rights with respect to [Child]. The [c]ourt further finds that it is in the best interest of [Child] that the [A]gency's petition be granted.

It is hereby ordered, adjudged, and decreed that all parental rights of [Mother] and [Father] in respect to [Child] are terminated forever. Custody of [Child] will continue with the [Agency], which is authorized to consent to the adoption of [Child]. [Child] may now be adopted without further consent or notice to the parents.

The [c]ourt will also be filing an order changing the court-ordered goal. In doing so, the [c]ourt orders and directs that the current

goal of return to parent or guardian is changed to placement for adoption and a new concurrent goal of placement with a legal custodian nonrelative is established. I apologize, the [c]ourt edits its dictated order that the new concurrent goal of placement with a legal custodian is established. The [c]ourt is not establishing whether that is relative or nonrelative here today. Legal and physical custody of the child is confirmed with [the Agency].

N.T., Op., 4/20/21, at 1-8.

On April 21, 2021, the trial court filed the decree granting the Agency's petition to terminate Mother's parental rights under Section 2511(a)(1), (2), (5), (8), and (b), and it filed a separate order changing Child's placement goal to adoption. Mother timely appealed and complied with Pa.R.A.P. 1925(a)(2)(i) and (b).[6]

As noted, Counsel filed a petition to withdraw and an **Anders** brief. In the **Anders** brief, Counsel identifies the following issues:

1. Whether the trial court erred in terminating the parental rights of Mother pursuant to Sections 2511 (a)(1), (2), (5), and (8) of the Adoption Act.

2. Whether the trial court erred in concluding that termination of parental rights would best serve the needs and welfare of Child pursuant to Section 2511 (b) of the Adoption Act.

3. Whether the trial court erred in changing the goal from reunification to adoption.

4. Whether the trial court erred in refusing to consider placement of Child with biological family rather than in foster care placement.

---

[6] As mentioned previously, Mother filed a separate notice of appeal at each trial court docket. Attached to each notice of appeal was a statement of errors complained of on appeal. **See** Pa.R.A.P. 1925(a)(2)(i), (b).

***Anders*** Brief at 5-6 (some formatting altered).[7]

When faced with an ***Anders***/***Santiago*** brief, this Court may not review the merits of any possible underlying issues without first examining counsel's request to withdraw. ***See In re X.J.***, 105 A.3d 1, 3 (Pa. Super. 2014). As this Court has stated:

> To withdraw pursuant to ***Anders***, counsel must:
>
> > 1) petition the court for leave to withdraw stating that, after making a conscientious examination of the record, counsel has determined that the appeal would be frivolous; 2) furnish a copy of the [***Anders***] brief to the [appellant]; and 3) advise the [appellant] that he or she has the right to retain private counsel or raise additional arguments that the [appellant] deems worthy of the court's attention.
>
> With respect to the third requirement of ***Anders***, that counsel inform the appellant of his or her rights in light of counsel's withdrawal, this Court has held that counsel must "attach to their petition to withdraw a copy of the letter sent to their client advising him or her of their rights."

***In re J.D.H.***, 171 A.3d at 903, 907 (Pa. Super. 2017) (citations omitted).[8]

Additionally, counsel must file a brief that meets the following requirements established by the Pennsylvania Supreme Court in ***Santiago***:

> (1) provide a summary of the procedural history and facts, with citations to the record;
>
> (2) refer to anything in the record that counsel believes arguably supports the appeal;

---

[7] For purposes of our discussion, we have reordered the issues presented in the ***Anders*** brief.

[8] Mother has not filed a response to Counsel's petition to withdraw.

(3) set forth counsel's conclusion that the appeal is frivolous; and

(4) state counsel's reasons for concluding that the appeal is frivolous. Counsel should articulate the relevant facts of record, controlling case law, and/or statutes on point that have led to the conclusion that the appeal is frivolous.

*In re Adoption of M.C.F.*, 230 A.3d 1217, 1219 (Pa. Super. 2020) (citation omitted).

"After an appellate court receives an *Anders* brief and is satisfied that counsel has complied with the aforementioned requirements, the Court then must undertake an independent examination of the record to determine whether the appeal is wholly frivolous." *In re S.M.B.*, 856 A.2d 1235, 1237 (Pa. Super. 2004) (citation omitted). Our independent review is not limited to the issues discussed by counsel, but extends to "additional, non-frivolous issues" that may have been overlooked by counsel. *J.D.H.*, 171 A.3d at 908 (citation omitted). An appeal is frivolous when it lacks any basis in law or fact. *See M.C.F.*, 230 A.3d at 1220; *accord Santiago*, 978 A.2d at 355.

The record reveals that on August 18, 2021, Counsel filed a petition to withdraw and *Anders* brief asserting that Mother's appeals are frivolous. On August 23, 2021, this Court struck the *Anders* brief and denied Counsel's petition to withdraw without prejudice to Counsel's ability to file an amended petition to withdraw that complied with *Anders* and *Santiago*. Order, 8/23/21. Counsel was instructed to file an amended petition to withdraw and *Anders* brief referring to anything in the record that arguably supports an appeal and providing Counsel's reasons for concluding Mother's challenge are

frivolous with citations to the record that are arguably relevant to the analysis. *Id.* On August 25, 2021, Counsel filed an amended petition to withdraw and *Anders* brief.

We conclude that Counsel has complied with the *Anders*/*Santiago* procedures by filing a petition to withdraw and supplying Mother with a copy of the *Anders* brief and a letter explaining Mother's appellate rights. Moreover, the *Anders* brief includes a summary of the relevant facts and procedural history, and Counsel explains her reasons for concluding that the issues are frivolous. Because Counsel has complied with the threshold requirements to withdraw, we proceed to an independent review of whether the issues are frivolous. *See S.M.B.*, 856 A.2d at 1237-38.

**Decree Terminating Parental Rights**

As noted above, in Mother's first two issues, she claims that the trial court erred or abused its discretion in terminating her parental rights to Child pursuant to Section 2511(a) and (b). We begin by stating our standard of review:

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

- 9 -

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations omitted). Termination

of parental rights is governed by Section 2511 of the Adoption Act, 23 Pa.C.S.

§§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in Section 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to Section 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child. One major aspect of the needs and welfare analysis concerns the nature and status of the emotional bond between parent and child, with close attention paid to the effect on the child of permanently severing any such bond.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted). We note

that we need only agree with the trial court as to any one subsection of Section

2511(a), as well as Section 2511(b), to affirm an order terminating parental

rights. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*).

We first address the involuntary termination of Mother's parental rights

under Section 2511(a)(8), because it is dispositive in this matter.

> **(a) General rule.—**The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> \* \* \*
>
> (8) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency, 12 months or more have elapsed from the date of removal or placement, the conditions which led to the removal or placement of the child continue to exist and termination of parental rights would best serve the needs and welfare of the child.

23 Pa.C.S. § 2511(a)(8). Section 2511(a)(8) sets a twelve-month time frame for a parent to remedy the conditions that led to the child's removal by the court. *In re A.R.*, 837 A.2d 560, 564 (Pa. Super. 2003). Once the twelve-month time frame has been established, the trial court must determine whether the conditions that led to the child's removal continue to exist, despite the reasonable efforts of the child welfare agency. *Id.* The "relevant inquiry in this regard is whether the conditions that led to removal have been remedied and thus whether reunification of parent and child is imminent at the time of the hearing." *In re I.J.*, 972 A.2d 5, 11 (Pa. Super. 2009). Termination under Section 2511(a)(8) does not require the trial court to evaluate a parent's current willingness or ability to remedy the conditions that initially caused placement or the availability or efficacy of the agency's services. *See In re Adoption of M.E.P.*, 825 A.2d 1266, 1276 (Pa. Super. 2003). "A child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting." *Id.* (citation omitted).

The record reflects that the Agency has been involved with Mother and Child since September of 2019, and Child was adjudicated dependent on October 10, 2019. N.T., Hr'g, 4/20/21, at 31-32. Child has remained involved with and in the care of the Agency since that time.

When the termination hearing was held on April 20, 2021, Child had remained in placement for more than eighteen months. During this time, Mother has been unwilling or unable to care for herself or Child. As the trial

court noted, Mother has made minimal progress towards alleviating the circumstances which necessitated Child's original placement with the Agency and with the initial finding of dependency. N.T., Op., 4/20/21, at 1-8; *see also* N.T., Hr'g, 4/20/21, at 27, 45. Additionally, Mother has not established that she has or can acquire safe, stable, and appropriate housing for reunification with Child, and there is no indication that Mother is employed. N.T., Hr'g, 4/20/21, at 40. Mother has not performed any parental duties since Child was adjudicated dependent on October 10, 2019. *Id.* at 47.

Mother has not attended any medical or other appointments on behalf of or with Child, and Mother has not visited with Child in more than sixteen months. *Id.* at 42, 46. Mother has been non-compliant with services, and she has pending criminal charges for prostitution and possession of drug paraphernalia. *Id.* at 15. Additionally, Mother is not compliant with her supervised bail and has tested positive for illegal substances. *Id.* As of the date of the termination hearing, Mother's whereabouts were unknown to her probation officer. *Id.*

As stated above, Child's life cannot be put on hold in the hopes that Mother will summon the ability to manage the responsibilities of parenting. *See M.E.P.*, 825 A.2d at 1276. After review, we discern no error of law or abuse of discretion in the trial court's involuntarily termination of Mother's parental rights under Section 2511(a)(8), which is supported by the record based on clear and convincing evidence. We agree with Counsel's assessment that this issue is meritless.

We next review the trial court's conclusion that involuntarily terminating Mother's parental rights best serves Child's developmental, emotional, and physical needs and welfare pursuant to Section 2511(b).

> **(b) Other considerations.—**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).  We have explained:

> While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
>> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, . . . the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)).  "Common sense dictates that courts considering termination must also consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents."  *See T.S.M.*, 71 A.3d at 268.  In weighing the bond considerations

pursuant to Section 2511(b), "courts must keep the ticking clock of childhood ever in mind." *Id.* at 269. "Children are young for a scant number of years, and we have an obligation to see to their healthy development quickly. When courts fail . . . the result, all too often, is catastrophically maladjusted children." *Id.*

Here, the trial court found that there was no parental bond between Child and Mother. N.T., Op., 4/20/21, at 6. Child was adjudicated dependent when she was only six months old. Since that time, Child has been placed with the Agency for more than eighteen months, which is most of her life, and Mother does not visit Child. The record supports the trial court's conclusion that Child would suffer no long-term negative impact from the termination of Mother's parental rights. N.T., Hr'g, 4/20/21, at 47. Mother has made no progress toward alleviating the circumstances that necessitated adjudicating Child dependent and placing Child in foster care, and Child views her foster mother as her parent. *Id.* On this record we conclude that there was no abuse of discretion in the trial court's determination that terminating Mother's parental rights best serves the needs and welfare of Child. *See C.D.R.*, 111 A.3d at 1219. Moreover, we agree with Counsel's assessment that this issue is frivolous.

### Order Changing Child's Placement Goal

In Mother's third issue, she contends that the trial court erred or abused its discretion in changing Child's placement goal to adoption. However,

because we conclude that there was no abuse of discretion or error of law in the trial court's decree that terminated Mother's parental rights, Mother's appeal from the order changing Child's placement goal to adoption is moot. *See In the Interest of D.R.-W.*, 227 A.3d 905, 917 (Pa. Super. 2020) (noting that "even if Father had not waived his goal change claim, it would be moot in light of our decision to affirm the court's termination decrees" (citing *In re D.A.*, 801 A.2d 614, 616 (Pa. Super. 2002)).

However, even if this issue was not moot, we would conclude that there is no error or non-frivolous issues relative to the order changing Child's placement goal.

We review decisions changing a placement goal for an abuse of discretion. *In re R.M.G.*, 997 A.2d 339, 345 (Pa. Super. 2010). We have explained:

> Pursuant to [42 Pa.C.S.] § 6351(f) of the Juvenile Act, when considering a petition for a goal change for a dependent child, the juvenile court is to consider, *inter alia*: (1) the continuing necessity for and appropriateness of the placement; (2) the extent of compliance with the family service plan; (3) the extent of progress made towards alleviating the circumstances which necessitated the original placement; (4) the appropriateness and feasibility of the current placement goal for the children; (5) a likely date by which the goal for the child might be achieved; (6) the child's safety; and (7) whether the child has been in placement for at least fifteen of the last twenty-two months. The best interests of the child, and not the interests of the parent, must guide the trial court. As this Court has held, a child's life simply cannot be put on hold in the hope that the parent will summon the ability to handle the responsibilities of parenting.

- 15 -

*In re A.B.*, 19 A.3d 1084, 1088-89 (Pa. Super. 2011) (citations and quotation marks omitted).

The evidence described above supports the trial court's decision to change Child's permanency goal from reunification to adoption. Mother has not made any progress since Child's placement with the Agency in 2019. Therefore, were we to reach this issue, we would not find any non-frivolous issues to support Mother's appeal from the order changing Child's placement goal.

In her fourth issue, Mother challenges the trial court's alleged refusal to consider placement of Child with a biological family member rather than foster care. As in our disposition of Mother's third issue, we conclude that this claim relating to placement of Child is moot. *See D.R.-W.*, 227 A.3d at 917 (stating that where this Court affirms the decree terminating parental rights, an appeal from an order changing placement is moot).

We note that the trial court made no determination on this issue. Indeed, in the *Anders* brief, Counsel contends that the order is not final on this point and therefore not appealable. *Anders* Brief at 36. Were we to reach this issue, we would agree with Counsel's assessment. There was no order for placement of Child with a relative or non-relative. Therefore, there is no order, final or otherwise, from which to take an appeal on this issue. Clearly, we cannot determine if the trial court's decision concerning placement with a relative or non-relative was in error where the trial court did not decide this issue after changing Child's placement goal but ordering only that "today"

custody was to remain with the Agency. N.T., Op., 4/20/21, at 8. Accordingly, we agree with Counsel that this issue is frivolous, and that it does not support an appeal.

For the reasons set forth above, we discern no abuse of discretion or error of law in the trial court's involuntarily termination of Mother's parental rights to Child. Additionally, we have conducted an independent review of the record and conclude that Mother's appeal is frivolous and that Counsel has not overlooked any additional, non-frivolous issues.

Accordingly, we grant Counsel's petition to withdraw, affirm the decree terminating Mother's parental rights pursuant to 23 Pa.C.S. § 2511(a)(8) and (b), and we dismiss as moot Mother's appeal from the order changing Child's permanency goal to adoption.

Decree affirmed. Appeal from the order changing the placement goal is dismissed as moot. Counsel's petition to withdraw is granted.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 01/06/2022

- 17 -